Betty Jo JOHNSON, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 67A01–9206–CR–176.

Court of Appeals of Indiana,
First District.

Dec. 22, 1992.

Transfer Denied Feb. 17, 1993.

Brent Westerfeld, Indianapolis, for appellant-defendant.

Linley E. Pearson, Atty. Gen. of Indiana and Cynthia L. Ploughe, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

ROBERTSON, Judge.

Betty Jo Johnson appeals her conviction of burglary, a class A felony. Johnson challenges the sufficiency of the evidence to sustain her conviction, and contends that her conviction, entered upon a general verdict of guilty of burglary, cannot stand because the case was submitted to the jury on an illegal theory.

We affirm.

### I.

The evidence of record most favorable to the verdict established that during the early morning hours of August 8, 1991, Johnson was socializing with acquaintances on a porch adjacent to a pub owned by Johnson's friend, Tom Stevens. Johnson met Richard Couch, the decedent, who was intoxicated. Couch requested a ride to his motel room from Johnson. The motel was just a short distance away, so Johnson agreed.

Upon her return to the porch, Johnson reported to Stevens and others there that Couch had drug her into his room and attempted to rape her. Johnson asked Stevens to beat Couch up but Stevens declined. However, Pat Campbell, a bartender whom Johnson had befriended, agreed to go talk to Couch and rounded up some friends to go with him. Johnson told police that she was upset and crying when she told Campbell what happened. "He kind of blew up. He got mad and he told a couple of his buddies of his and he said B.J. we're gona go down and get him." "[A]ll they was supposed to do was just go threaten him . . . just threaten him." Johnson elaborated on the plan:

> They was just gona go knock on his door and threaten him and tell him to stay away from me and that he had better not to [sic] do what he had done to me and that they did know what he had done whether he wanted me to tell or not.

Johnson testified at trial that Campbell had suggested that "he could go over there and talk to the guy, find out why he did it and make sure that he left me alone after that." Johnson wanted someone to "go . . . punch him in the nose, go let him know that he just can't go around doin' that, I mean he shouldn't have got away with what he did to me." "[T]ell him to leave me alone, stay away from me, don't mess with me again, don't bother me again."

There was some discussion about weapons. Johnson advised that she had a rifle and a knife which Stevens had given her for protection. Johnson left the porch to obtain the knife. When she returned, she gave it to Campbell. Campbell explained: "We were gonna see why he did this to Ms. Johnson. We needed the knife or club cause he was a fairly large person, if any trouble broke out we could handle it." Campbell told the jury that they were "gonna at least threaten him." According to Campbell, Couch wasn't the kind of guy who would just sit there and take it.

Campbell called to Johnson from his car to come with them to knock on the door so that the decedent would answer. Johnson got in the back of the car and rode to the motel where she, Campbell and two others, Matt Scheckel and Ron Lowrimore, proceeded to Couch's room. When Couch would not respond to Johnson's calls, the foursome decided to kick in the door.

Johnson and Campbell returned to the car and moved it to the side of the motel. Campbell instructed Johnson to open the door so that Lowrimore could get into the car quickly. Johnson opened the door. Campbell heard a noise, and then Lowrimore returned to the car. On the way back to the porch, Lowrimore told the others that Couch had been "cut." Scheckel returned to the porch on his own, indicating that he had left his cigarettes in Couch's room. Scheckel disposed of the knife while Johnson put Stevens' blackjack club in her car. The foursome then got together on the porch to get their stories straight. By 9:00 a.m., Johnson had decided to go to the police. When she called, she learned that Couch had died.

The State alleged in its information against Johnson that

> on or about the 8th day of August, A.D. 1991, at and in the County of Putnam, State of Indiana, [Johnson] did . . . knowingly or intentionally aid, induce, or cause Matt Scheckel and Ron Lowrimore to break and enter the residence of another person, to-wit: Richard Couch, with intent to commit a Felony in it, to-wit: one or more of the following:
>
> Murder,
> Battery with a Deadly Weapon,
> Battery causing serious bodily injury,
> Intimidation by Threat of a Forcible Felony, or
> Intimidation with a Deadly Weapon,
>
> while armed with a deadly weapon, which resulted in bodily injury or serious bodily injury to the said Richard Couch.

To meet its burden of proving this allegation, it was thus necessary for the State to prove that Johnson aided, induced or caused burglary and that when she so acted, she was aware of a high probability that her behavior was aiding, inducing or causing burglary. Ind.Code 35–41–2–4. The culpability element involves proof of an awareness of a high probability both

that Johnson was engaging in the actus reus of the crime, namely aiding, inducing or causing burglary, and that her behavior would facilitate the commission of a breaking and entering with the intent to commit one of the particularly named felonies. I.C. 35–41–2–2(d); *Fortson v. State* (1979), 270 Ind. 289, 385 N.E.2d 429, 434 (One must intend by his own actions to cause or facilitate commission by the principal offender of the crime charged).

■ However, under the charge made by the State, it was not necessary for the State to prove that Johnson knew her conduct would necessarily result in murder, that Johnson formally assented to the commission of murder beforehand, *id.*, or that she physically participated in each element of the underlying offense of burglary. Indiana Code 35–41–2–4, the accessory statute, has been construed to impose a form of vicarious liability "for everything ... which follows incidentally in the execution of the common design, as one of its natural and probable consequences, even though it was not intended as part of the original design or common plan," upon a showing that the accomplice acted in concert with those who physically committed the elements of the crime. *Fox v. State* (1986), Ind., 497 N.E.2d 221, 227; *Johnson v. State* (1986), Ind., 490 N.E.2d 333, 334.

■ A criminal conviction of burglary requires proof beyond a reasonable doubt of a specific criminal intent which coincides in time with the acts constituting the breaking and entering. *Robinson v. State* (1989), Ind., 541 N.E.2d 531, 532. The State need not establish by direct evidence that an individual possessed a specific intent; circumstantial evidence will suffice. *See e.g. Corbin v. State* (1990), Ind., 563 N.E.2d 86, 88. Typically, the intent to commit a felony can be inferred from the subsequent conduct of the individual inside the premises, *see e.g., Eveler v. State* (1988), Ind., 524 N.E.2d 9, 11 (subsequent commission of crimes of rape and deviate sexual conduct sufficient to support inference defendant intended to commit *a felony* when he broke and entered victim's apartment), or by the manner in which the crime was committed. *Cash v. State* (1990), Ind., 557 N.E.2d 1023, 1024.

■ Indiana law recognizes that a burglar may possess more than one specific intent at the time he breaks and enters another's dwelling. *Eby v. State* (1972), 154 Ind.App. 509, 290 N.E.2d 89. *See also, Eveler*, 524 N.E.2d 9; *Quire v. State* (1983), Ind., 449 N.E.2d 1083. Indeed, these intents may be alternative intents and conditional. As this court explained in *Eby*,

[W]hatever may have been [a burglar's] primary intent or purpose, he must have anticipated that confrontation with [a dwelling's] inhabitants was not unlikely and that his presence would not be welcome. If a confrontation then occurs and he does commit an act of violence upon the person he then confronts, the commission of the act is sufficient to justify the inference that he entered with the specific intent to do what he did, provided the occasion arose. That he also had or may have had, a different *purpose* or *reason* for breaking and entering would subtract nothing from the reasonability of inferring the concurrent intent to do violence if confronted. Nor would insufficiency of the evidence imply precisely what a defendant's purpose was subtract anything from the reasonableness of inferring intent on entry to do violence, if violence is committed after entry and if there is no reasonable doubt that the purpose for breaking in was not innocent.

290 N.E.2d at 95. The conditional intent to do violence if necessary is specific. *Id.* at 96.

■ The State need not prove each of the alternative specific intents it alleges. *Bauer v. State* (1983), Ind., 456 N.E.2d 414, 415. *See also Davis v. State* (1985), Ind. App., 476 N.E.2d 127, *trans. denied; Layne v. State* (1973), 164 Ind.App. 486, 329 N.E.2d 612 (State may properly charge alternative acts). The requirement that the State specify the crime intended in the information is designed to preclude a defendant from being twice convicted for the same offense and to enable the defendant

to prepare a defense. *Cash v. State* (1990), Ind., 557 N.E.2d 1023, 1024.

■ The State's evidence showed that Johnson performed several acts in furtherance of the burglary. She sought someone to "punch [Couch] in the nose," obtained a weapon and gave it to one of the others, attempted to lure Couch from the room, returned to the car and readied the car door, hid one of the weapons in her car, and participated in discussions on the group's "story." The evidence of Johnson's presence during the discussions about the need for weapons and for breaking into Couch's room, in combination with all the evidence of Johnson's participation, permits an inference that Johnson knew a breaking was to take place when Couch would not come to the door and that the intended purpose of the breaking was to at least commit a felony battery if necessary to convince Couch to leave her alone. The evidence of record is certainly sufficient to permit a jury to reasonably conclude that Johnson knowingly aided, induced or caused a breaking and entering with the intent to commit felony intimidation, battery with a deadly weapon, battery resulting in serious bodily injury, or murder as charged in the information.[1]

### II.

Johnson contends that her conviction of aiding, inducing or causing burglary cannot be sustained because, by the manner in which the offense of burglary was charged, the State was relieved of its burden of proving that her accomplices intended felonies. She posits that because the State need not prove culpability with respect to the circumstances which elevate the intended offenses from misdemeanors to felonies when those offenses are charged individually, as substantive offenses, *Head v. State* (1982), Ind., 443 N.E.2d 44, 50, the effect of charging an intent to commit what might be referred to as an aggravated misdemeanor is to require proof of an intent to commit an unintended result.

■ Johnson likens the charge of breaking and entering with the intent to commit an aggravated misdemeanor to an attempt to commit felony murder or reckless homicide, neither of which, as a substantive offense, requires proof of a *mens rea* as to the result but are elevated to a particular status by reason of the result. *See e.g. id.* The requirement of proof of a specific intent to accomplish a particular felony resulting in death is presumably supplied by the statute defining attempt crimes, *cf. Santana v. State* (1986), Ind., 486 N.E.2d 1010 and *Alexander v. State* (1988), Ind., 520 N.E.2d 99 with *Smith v. State* (1984), Ind., 459 N.E.2d 355, and *cf. Henderson v. State* (1989), Ind., 534 N.E.2d 1105, 1107 (Indiana has abandoned "specific intent, general intent" terminology by substantially implementing Model Penal Code approach), but by definition, a felony murder

---

1. Felony intimidation occurs when a person communicates a threat to commit a forcible felony with the intent that the other person engage in conduct against his will, or when a person, by words or action, and while drawing or using a deadly weapon, expresses an intent to injure the other person if the other person does not engage in conduct against his will. Ind. Code 35–45–2–1. A "forcible felony" means a felony that involves the use or threat of force against a human being, or in which there is imminent danger of bodily injury to a human being. I.C. 35–41–1–11. Battery committed by means of a deadly weapon and battery resulting in serious bodily injury are felonies involving the use of force against a human being.

The State's evidence established that Johnson and Campbell obtained weapons which were readily capable of causing serious bodily injury. See I.C. 35–41–1–8; I.C. 35–41–1–25. It is not unreasonable for a jury to infer from the fact that Johnson understood the need for weapons, that Johnson, like Campbell, was aware that Couch would not simply sit there and be threatened and that under those circumstances, it was natural and probable that the knife and/or blackjack club would be used. Indeed, the evidence even supports the inference that by providing a deadly weapon, Johnson was not just aware that the others intended to commit battery with a deadly weapon or battery resulting in serious bodily injury but actually intended that force greater than a punch in the nose be used to punish Couch or persuade him to leave her alone. For purposes of felony intimidation, the specific intent which must coincide with the threat, that the other person engage in conduct against his will, includes an intent that the other person refrain from conduct as well as affirmatively engage in conduct. *See Hyde v. State* (1988), Ind., 531 N.E.2d 472; *Sayles .v. State* (1987), Ind.App., 513 N.E.2d 183, *trans. denied.*

or reckless homicide is never intended; it only results. *Head,* 443 N.E.2d 44. For this reason, and in the absence of proof of a resulting death, Indiana courts have held that an information which charges attempted felony murder or attempted reckless homicide alleges a nonexistent crime and cannot stand. *See e.g. id.; Rhode v. State* (1979), 181 Ind.App. 265, 391 N.E.2d 666. Conviction of a nonexistant crime is fundamental error. *Moon v. State* (1977), 267 Ind. 27, 366 N.E.2d 1168.

▄▄ As we understand Johnson's analogy, the statute defining the offense of burglary imposes an additional element of proof with respect to the individual's mens rea, the intent to commit a felony. If a person breaks and enters a dwelling with the intent to commit a battery resulting in serious bodily injury as that crime is defined by the legislature in Indiana, he acts with the level of culpability required for commission of the crime and intends only to commit a misdemeanor. To impose an additional element of proof of intent, via the statute defining the offense of burglary, is to require proof of a crime which does not exist in Indiana: the legislature could have defined the crime of felony battery as a rude, insolent or angry touching with the intent that it result in serious bodily injury, but it did not. It defined felony battery as simply a misdemeanor battery with an unintended result of serious bodily injury.[2]

▄▄ We observe at the outset that if there is a defect in the statutes, we may not supply it by a construction to sustain a judgment of penal character. Without a statute proscribing an offense, there may be no criminal conviction. *Hargis v. State* (1942), 220 Ind. 429, 44 N.E.2d 307.

It is true that the legislature has relieved the State of the burden of proving culpability with respect to certain essential elements of the crimes of aggravated battery and aggravated intimidation by the manner

in which it has defined those particular felonies, *Markley v. State* (1981), Ind.App., 421 N.E.2d 20; but, it does not logically follow from that proposition that an individual is unable to form "the intent to commit" one of these types of felonies; that the State cannot prove a particular result or circumstance was intended; or that the legislature could not require proof of a unique mens rea when it created the crime of burglary. The requirement that the State prove some intent other than and in addition to the mens rea required to commit the actus reus of the crime of burglary, which arises from the definition of burglary and not from the felonies alleged by the State to have been specifically intended, *but cf., Evans v. State* (1984), Ind. App., 460 N.E.2d 1232. It is this very feature which distinguishes burglary with the intent to commit an aggravated misdemeanor from attempted felony murder or attempted reckless homicide. The crime of burglary adds a mens rea element to the state's burden of proof while an attempt crime adopts the level of culpability required for commission of the underlying offense. The State is not relieved of proving an element but required to prove an additional one.

Moreover, we have not found any Indiana authority interpreting the language "with the intent to commit a felony," to require only a showing of the culpability required for commission of the essential elements of the crime. Historically, similar language, referred to as a specific intent, has been construed to mean a definite and actual purpose to accomplish some particular thing, a particular or specific direction of the mind to achieve a result. *See, e.g., Eby,* 290 N.E.2d 89. If the legislature intended this common law definition when it constructed the statutorily proscribed offense of burglary, as we conclude it did, *see Pratt v. State* (1986), Ind., 492 N.E.2d 300, 301 (specific intent to commit a felony more complex thought than general

---

2. Although the Indiana Supreme Court has not confronted the issue raised by Johnson directly, it has affirmed convictions of burglary based upon charges which have alleged the burglar possessed the intent to commit felony battery at the time of entry. *See e.g., Davis v. State* (1989), Ind., 539 N.E.2d 929; *Freeze v. State* (1986), Ind., 491 N.E.2d 202; and *Lyles v. State* (1991), Ind.App., 576 N.E.2d 1344, *trans. denied.*

intent to break and enter), there is no logical incongruency when felony battery or intimidation is alleged. The felonious result which the defendant is alleged to have desired at the time of the breaking is a battery or intimidation which results in serious bodily injury, not merely a rude, insolent or angry touching. No redefining of felony battery is needed. No proof of the intended felony is required.

Though no issue has been raised upon this point, we have examined the trial court's final jury instructions to assure ourselves that the State was not in fact relieved of its burden of proof. The trial court specifically instructed the jury that "[i]f a person is charged with intentionally causing a result by his conduct, it must have been his conscious objective not only to engage in the conduct but also to cause the result." This instruction, in combination with the other instructions defining the offenses of burglary, battery, intimidation, and accessory responsibility, in the language of the pertinent statutes, properly informed the jury of the State's burden of proof.

Having determined that the evidence was sufficient upon proper instruction and that Johnson was not convicted of a nonexistent offense, we conclude that the judgment of conviction of class A burglary should be affirmed.

Judgment affirmed.

RATLIFF, Senior Judge, and GARRARD, J., concur.