**Frederick MALONE, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 20A05–9410–CR–398.**

Court of Appeals of Indiana.

Jan. 29, 1996.

Transfer Denied May 23, 1996.

Susan K. Carpenter, Public Defender, Gregory L. Lewis, Deputy Public Defender, Indianapolis, for appellant.

Pamela Carter, Attorney General, Lisa M. Paunicka, Deputy Attorney General, Office of Attorney General, Indianapolis, for appellee.

## OPINION

SHARPNACK, Chief Judge.

Frederick Malone appeals his burglary conviction. He raises six issues, which we restate as:

1. whether Malone received ineffective assistance of counsel when his trial attorney failed to object to hearsay statements relevant to Malone's intent;

2. whether the trial court committed fundamental error by giving an instruction which defined reasonable doubt using the term "moral certainty";

3. whether the trial court's final instructions were unconstitutional because they diluted the State's burden of proof regarding Malone's intent;

4. whether the trial court committed fundamental error by giving a preliminary instruction which vitiated Malone's due process right to the presumption of innocence;

5. whether the trial court's final instructions violated Article I, § 19 of the Indiana Constitution; and

6. whether Malone was improperly sentenced on the basis of an inaccurate pre-sentence.investigation report.

We affirm.

The facts relevant to this appeal follow. Ruth Duran, Sandra Baumer, and Kim George shared an apartment in Elkhart. On August 28, 1993, at approximately 6:30 a.m., Duran walked into the bathroom and was attacked by Malone. Malone held a knife to her throat and ordered her to be quiet. Malone closed the bathroom door, shoved Duran against it, and demanded that she perform oral sex on him. As Malone removed his hands from Duran's throat, he heard a noise. Duran told him that it might be her husband. Malone became frightened, ran out of the bathroom and jumped out the window in Baumer's bedroom. Duran observed Baumer's wallet in the bathroom. Duran testified at trial that Baumer did not usually leave her wallet in the bathroom. Duran further testified that Baumer told her approximately one hundred dollars was missing from the wallet after the attack. Evidence was submitted at trial that Malone entered the apartment by moving a window fan which was in Baumer's bedroom window.

Malone was soon after apprehended and questioned. Malone was charged and later convicted of burglary, a class B felony. He now appeals his conviction.

## I.

The first issue for our review is whether Malone received ineffective assistance of counsel when his trial attorney failed to object to hearsay statements relevant to Malone's intent. To prove Malone guilty of burglary, the State had to demonstrate that he broke and entered the dwelling of Ruth Duran with the specific intent to commit a felony in the dwelling. *See* Ind.Code § 35–43–2–1. The State chose theft as the underlying felony for the burglary charge. Thus, in addition to the other elements of burglary, the State also had to prove that Malone intended to knowingly exert unauthorized control over the property of the owner and to deprive the owner of the property's value and use. *Id.*

Malone argues that the State introduced inadmissible hearsay evidence to prove Malone's intent to commit theft. He specifically objects to Duran's testimony that Baumer told her money was missing from the wallet after the attack. Malone, therefore, contends that his counsel was deficient for failing to object to the admission of the hearsay testimony.

Indiana evaluates ineffective assistance of counsel claims on the basis of a two-part standard. First, the defendant must show that his trial counsel's performance was

"deficient." *Clark v. State* (1990), Ind., 561 N.E.2d 759, 762 (citing *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, *reh'g denied*, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864). A counsel's performance is deficient when it falls "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2064. Reasonableness is measured by the "prevailing professional norms" within the legal profession as applied to the particular facts of the case. *Id.* "An accused is entitled to be assisted by an attorney ... who plays the role necessary to ensure that the trial is fair." *Id.* at 685, 104 S.Ct. at 2063.

Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 693–694, 104 S.Ct. at 2068.

During the State's case-in-chief, Duran testified that a wallet belonging to her roommate, Baumer, was in the bathroom at the time of the attack. Subsequently, Duran testified as follows:

"[Prosecutor Wicks:] And do you know if any money turned up missing?

[Ruth Duran:] One hundred dollars.

Q. Where is Sandy Baumer now, do you know?

A. I have no idea at this moment.

Q. As far as you know, $100 was taken from Sandy Baumer's—

A. Right.

Q. —wallet by the defendant?

A. Right, because that's what she said she had missing was $100."

Record, p. 128. Malone's trial counsel failed to object to this testimony on the basis of hearsay.

■ Hearsay is an out of court statement offered in a judicial proceeding to prove the truth of the matter asserted therein, and rests on the credibility of a declarant who is not in court and is unavailable for cross-examination. *Hughes v. State* (1989), Ind., 546 N.E.2d 1203, 1208; *Robinson v. State* (1994), Ind.App., 634 N.E.2d 1367, 1374. If the challenged evidence is hearsay and does not fall within one of the exceptions to the rule, it is inadmissible. *Robinson*, 634 N.E.2d at 1374.

■ The parties agree that Duran's challenged testimony constitutes inadmissible hearsay. It is an out of court statement which was offered to prove that approximately one hundred dollars had been stolen from Baumer's wallet. Therefore, defense counsel erred in failing to object to the statement. However, our analysis is not complete. Rather, we must address whether counsel's error requires us to reverse Malone's conviction. Reversible error occurs only if prejudice results to the defendant. *Id.* at 1374; *see also Hall v. State* (1994), Ind.App., 634 N.E.2d 837, 843.

■ The improper admission of evidence is harmless error when the conviction is supported by such substantial independent evidence of guilt as to satisfy the appellate court that there is no likelihood that the challenged evidence contributed to the conviction. *Wickizer v. State* (1993), Ind., 626 N.E.2d 795, 800.

■ We conclude that Malone failed to demonstrate a reasonable probability that, but for counsel's error, the result of the trial would have been different. Although a criminal conviction of burglary requires proof beyond a reasonable doubt of a specific criminal intent which coincides in time with the acts constituting the breaking and entering, the State need not establish by direct evidence that an individual possessed a specific intent. *Johnson v. State* (1993), Ind.App., 605 N.E.2d 762, 765, *trans. denied*. While it is generally true that proof of a mere breaking and entry does not constitute evidence of intent to commit a felony, such intent may be inferred from the time, force, and manner of entry if there is no evidence the entry was made with lawful intent. *Batie v. State* (1984), Ind.App., 464 N.E.2d 1319, 1320, *reh'g denied*, *trans. denied*. Circumstantial evidence supporting facts beyond the mere breaking and entering may support the intent element. *Id.*, *Blow v. State* (1983), Ind., 445 N.E.2d 1369. We do not have to find that circumstantial evidence is sufficient to

overcome every reasonable possibility of innocence but only that an inference may reasonably be drawn therefrom which tends to support the finding of the jury. *Parks v. State* (1979), 270 Ind. 689, 389 N.E.2d 286, 290.

In the case before us, the State presented evidence independent from the testimony about the missing money (which should have been excluded upon a proper hearsay objection) from which the jury could infer Malone's intent to commit theft. Testimony was presented at trial that Malone entered the house through Baumer's bedroom window after moving the window fan. Furthermore, testimony was presented that Baumer's wallet was in the bathroom during the attack and that it was unusual for the wallet to be there. Specifically, Duran stated:

"[Duran] There was a wallet.

\* \* \* \* \* \*

A   It was in the bathroom. It ended up being my roommate's wallet.

[Prosecutor] Who was that?

A   Sandra Baumer.

Q   Did the defendant have the wallet?

A   It was in the bathroom so it had to—he had to have, because Sandy's room is the room he entered into and that's where she keeps her wallet and stuff.

But when I woke up he was in the bathroom, so it was in the bathroom. And I know Sandy hadn't left it in the bathroom. She don't [sic] leave her wallet laying around."

Record, pp. 127–128. Moreover, Duran testified that Malone ran out of the bathroom and jumped out Baumer's bedroom window after she told him that a noise they heard was probably her husband.

In *Sipes v. State* (1987), Ind., 505 N.E.2d 796, 797, our supreme court addressed a similar issue. The court held that evidence of the defendant fleeing without taking money on a nearby table did not preclude the finding of the intent to steal in a burglary case because there was evidence that the defendant fled after the victim screamed. *Id.* Similarly, Malone fled from the bathroom where the wallet was located after panicking when Duran told him the noise they

heard was her husband. Furthermore, the jury reasonably could have concluded that the wallet was in the bathroom with Malone because he had carried it in there from Baumer's room after entering the apartment through her window. That would constitute the exercise of unauthorized control over Baumer's property and would suffice to establish the requisite intent.

Consequently, Malone failed to demonstrate a reasonable probability that, had this statement not been admitted, there would have been insufficient evidence for the jury to find beyond a reasonable doubt that Malone broke into the apartment with the intent to commit theft. Accordingly, we find that counsel's failure to object to the hearsay evidence did not constitute deficient performance which resulted in prejudice to Malone and, therefore, Malone did not receive ineffective assistance of counsel.

## II.

The second issue raised for our review is whether the trial court committed fundamental error by giving an instruction which defined reasonable doubt using the term "moral certainty". The record reveals that Malone did not object to this instruction at trial. Typically, failure to object to an instruction in a timely fashion results in waiving the issue on appeal. *England v. State* (1988), Ind., 530 N.E.2d 100, 102. However, Malone now contends that the instruction constituted fundamental error. Fundamental error is error so blatant and prejudicial that, if not corrected, it would deny the defendant due process. *Faulisi v. State* (1992), Ind.App., 602 N.E.2d 1032, 1038, *trans. denied.*

At Malone's trial, the trial court gave the following final instruction to define reasonable doubt:

"The burden of proof is upon the State of Indiana to prove the defendant guilty beyond a reasonable doubt.

*A reasonable doubt is such doubt as you may have in your mind when having fairly considered all of the evidence, you do not feel satisfied to a moral certainty of the guilt of the defendant. A reasonable*

doubt is a fair, actual and logical doubt that arises in the mind as an impartial consideration of all the evidence and the circumstances in the case. It is not every doubt, however, that is a reasonable one. You are not warranted in considering as reasonable those doubts that may be merely speculative or products of the imagination, and you may not act upon mere whim, guess or surmise or upon the mere possibility of guilt. A reasonable doubt arises, or exists in the mind, naturally, as a result of the evidence or the lack of evidence. Thee [sic] is nothing in this that is mysterious of [sic] fanciful. It does not contemplate absolute or mathematical certainty. Despite every precaution that may be taken to prevent it, there may be in all matters depending upon human testimony for proof, a mere possibility of error.

If, after considering all of the evidence, you have reached such a firm belief in the guilt of the defendant that you would feel safe to act upon that belief, without hesitation, in a matter of the highest concern and importance to you, then you have reached that degree of certainty which excludes reasonable doubt and authorizes conviction.

This rule on reasonable doubt applies to each of you individually, and it is your personal duty to refuse to convict as long as you have a reasonable doubt as to the defendant's guilt as charged. Likewise, it is your personal duty to vote for conviction as long as you are convinced beyond a reasonable doubt of the defendant's guilt as charged."

Record, pp. 58–59 (emphasis added). Malone argues that this instruction violated his state and federal constitutional rights to due process because it unconstitutionally lowered the State's burden of proof by defining reasonable doubt in terms of moral certainty. We disagree.

■ An instruction need not use any particular form or wording in defining reasonable doubt; in fact, it need not even provide a definition. *Victor v. Nebraska* (1994) 511 U.S. ——, 114 S.Ct. 1239, 127 L.Ed.2d 583, *reh'g denied, Sandoval v. California,* —— U.S. ——, 114 S.Ct. 1872, 128 L.Ed.2d 492.

Rather, taken as a whole, the instructions must correctly convey the concept of reasonable doubt to the jury. *Id.* (quoting *Holland v. United States* (1954), 348 U.S. 121, 140, 75 S.Ct. 127, 137, 99 L.Ed. 150, *reh'g denied*). Here, the jury instruction was sufficiently clear in setting forth the standard which the jury was obliged to follow.

Initially, we note that other panels of our court have reviewed this instruction. One panel held it to be deficient because it impermissibly relieved the State of its constitutionally-imposed burden of proof by equating reasonable doubt with moral certainty. *Winegeart v. State* (1994), Ind.App., 644 N.E.2d 180, 183, *transfer granted, opinion pending.* Another panel upheld the instruction, maintaining that the "moral certainty" phrase was not fatal to the instruction because there was sufficient context to lend meaning to the phrase and because the instruction sufficiently directed the jury as to the required burden. *Jackson v. State* (1995), Ind.App., 657 N.E.2d 131, 138. We follow the latter holding today.

The United States Supreme Court has held in only one case that a definition of reasonable doubt was unconstitutional. *Cage v. Louisiana* (1990), 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339. In that case, the jurors were instructed as follows:

"[A reasonable doubt] is one that is founded upon a real tangible substantial basis and not upon mere caprice and conjecture. *It must be such doubt as would give rise to a grave uncertainty,* raised in your mind by reasons of the unsatisfactory character of the evidence or lack thereof. A reasonable doubt is not a mere possible doubt. *It is an actual substantial doubt.* It is a doubt that a reasonable man can seriously entertain. What is required is not an absolute or mathematical certainty, but a *moral certainty.*"

*Id.* at 40, 111 S.Ct. at 329 (original emphasis). The Supreme Court held that the highlighted portions of the instruction rendered it unconstitutional. *Id.* at 41, 111 S.Ct. at 329. The Court reasoned that the words "substantial" and "grave" together with the reference to "moral certainty", rather than an evidentiary certainty, could cause a reasonable juror to

interpret the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause. *Id.*

In a subsequent case, the Court clarified that the proper inquiry is not whether the instruction "could have" been applied in an unconstitutional manner, but whether there is a reasonable likelihood that the jury did so apply it. *Estelle v. McGuire* (1991) 502 U.S. 62, 71–72, 112 S.Ct. 475, 482, 116 L.Ed.2d 385. The constitutional question, therefore, is not whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to prove every element of a charged offense beyond a reasonable doubt. *Id.*

During the 1994 term, the Supreme Court again addressed this issue in the consolidated cases of *Victor v. Nebraska* and *Sandoval v. California*, 511 U.S. at ——, 114 S.Ct. at 1239. In Sandoval's case, the jury was given the following instruction:

"Reasonable doubt is defined as follows: It is *not a mere possible doubt;* because everything relating to human affairs, and *depending on moral evidence,* is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, *to a moral certainty,* of the truth of the charge."

*Id.* at ——, 114 S.Ct. at 1244 (emphasis added). On appeal, Sandoval contested the use of the phrases "moral evidence" and "moral certainty." He argued both that the phrase "moral certainty" allowed the jury to convict on a standard lower than reasonable doubt and that the possibility remained that a juror might be convinced to a "moral certainty" despite the fact that the State had not proven his guilt. The Court rejected both arguments.

With respect to the first argument, the Court stated that although moral certainty is ambiguous in the abstract, the rest of the instruction lent meaning to the phrase. *Id.* at ——, 114 S.Ct. at 1247. The Court was satisfied that the reference to moral certainty, in conjunction with the abiding conviction language, "impress[ed] upon the factfinder

the need to reach a subjective state of near certitude of the guilt of the accused." *Id.* (quoting *Jackson v. Virginia* (1979), 443 U.S. 307, 320, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, *reh'g denied,* 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126).

As for Sandoval's second argument, the Court stated that the "moral certainty" language could not be "sequestered" from its surroundings. *Victor,* 511 U.S. at ——, 114 S.Ct. at 1248. Unlike the defective instruction in *Cage,* in which jurors were directed to be morally certain without further guidance as to the meaning of that phrase, Sandoval's jury was given thorough direction. The jury was directed that reasonable doubt is "that state of the case which, after the entire comparison and consideration of all of the evidence, leaves the minds of the jury in the conviction that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge." *Id.* The Court further stated that other instructions reinforced this message, so there was no reasonable likelihood that the jury would have understood "moral certainty" to be disassociated from the evidence in the case. *Id.* While the Court specifically stated that it did not condone the use of the words "moral certainty", the Court found that it was not reasonably likely that the jury understood the words either as suggesting a standard of proof lower than due process or as allowing a conviction on factors other than the government's proof. *Id.*

In the same opinion, the Court addressed an instruction given at Victor's murder trial. The instruction stated:

" 'Reasonable doubt' is such doubt as would cause a reasonable and prudent person, in one of the graver and more important transactions of life, to pause and hesitate before taking the represented facts as true and relying and acting thereon. It is such a doubt as will not permit you, after full, fair, and impartial consideration of all the evidence, to have an abiding conviction, *to a moral certainty,* of the guilt of the accused. At the same time, absolute or mathematical certainty is not required. You may be convinced of the truth of a fact beyond a reasonable doubt and yet be fully

aware that possibly you may be mistaken. You may find an accused guilty upon the *strong probabilities of the case,* provided such probabilities are strong enough to exclude any doubt of his guilt that is reasonable. A reasonable doubt is an *actual and substantial doubt* arising from the evidence, from the lack of evidence on the part of the state, as distinguished from a doubt arising from mere possibility, from bare imagination, or from fanciful conjecture."

*Id.* at ——, 114 S.Ct. at 1249 (emphasis added). Like Sandoval, Victor challenged the "moral certainty" portion of the instruction. The Court acknowledged that the instruction was problematic, but found that any ambiguity was removed by reading the phrase in the context of the sentence in which it appeared: "[a] reasonable doubt is an actual and substantial doubt ... as distinguished from mere possibility, from bare imagination, or from fanciful conjecture." *Id.* at ——, 114 S.Ct. at 1250. The Court distinguished this instruction from the defective one given in *Cage.* The Court noted that the problem in *Cage* was that the rest of the instruction provided insufficient context to lend meaning to the phrase "moral certainty". *Victor,* 511 U.S. at ——, 114 S.Ct. at 1250.

Furthermore, Victor's instruction, like Sandoval's referred to "an abiding conviction." *Id.* The jury was also instructed that they must be convinced "after a full, fair, and impartial consideration of all the evidence" and that they "should be governed solely by the evidence introduced...." *Id.* at ——, 114 S.Ct. at 1251.

The Court concluded that the instructions given in Sandoval's and Victor's cases "taken as a whole, ... correctly conveyed the concept of reasonable doubt to the jury." *Id.* (quoting *Holland,* 348 U.S. at 140, 75 S.Ct. at 137). The Court concluded that there was no reasonable likelihood that the jurors who determined the men's guilt applied the instructions in such a way that violated the Constitution.

Like the instructions examined in *Victor* and unlike the instruction in *Cage,* the phrase "moral certainty" in the challenged instruc-

tion did not stand alone and was not undefined. As in *Victor,* the remainder of the instruction provided sufficient context to lend meaning to the phrase. For example, the instruction before us today states in part:

"If, after considering all of the evidence, you have reached such a firm belief in the guilt of the defendant that you would feel safe to act upon that belief, without hesitation, in a matter of the highest concern and importance to you, then you have reached that degree of certainty which excludes reasonable doubt and authorizes conviction."

Record, pp. 28–29. This portion is strikingly similar to a part of Victor's instruction:

"'Reasonable doubt' is such a doubt as would cause a reasonable and prudent person, in one of the graver and more important transactions of life, to pause and hesitate before taking the represented facts as true and relying and acting thereon."

*Victor,* 511 U.S. at ——, 114 S.Ct. at 1249. When the Court reviewed the above language, it stated that where a juror was morally certain of a fact, and would not hesitate to act on the same, "such a fact can be fairly said to have been proven beyond a reasonable doubt." *Id.* at —— – ——, 114 S.Ct. at 1250–1251. Furthermore, in *Bell v. State* (1993), Ind., 610 N.E.2d 229, *reh'g denied,* our supreme court determined that the language concerning an absence of hesitation to act was a proper statement of the burden of proof. *Id.* at 235.

Moreover, jurors in the case before us were also instructed that "[a] reasonable doubt is a fair, actual and logical doubt." Record, pp. 26–27. Recently, we held that "the words 'fair' 'actual' and 'logical' are all synonymous with 'reasonable'...." *Strong v. State* (1994), Ind.App., 633 N.E.2d 296, 298–299. Thus, the language surrounding the phrase "moral certainty" in the instruction before us gave it substance, providing for the jury a proper and understandable definition of reasonable doubt.

In addition, in upholding the instructions in *Victor,* the Supreme Court also relied upon the presence of language sufficient to establish that the jury's decision must be

based on the evidence. *Victor*, 511 U.S. at ——, 114 S.Ct. at 1251. This type of language is also present in Malone's instruction. The instruction repeatedly reminds the jury of its duty to find reasonable doubt from the evidence presented and only the evidence presented. For example, the jury was instructed that, "[a] reasonable doubt arises, or exists in the mind as a result of the evidence or the lack of evidence" and that it could not reach a verdict of guilt unless " . . . after considering all the evidence . . ." a reasonable doubt remained. Record, pp. 28–29. Consequently, there is little doubt that the jury was sufficiently instructed that their verdict required an evidentiary foundation.

Accordingly, we find that the instruction did not violate Malone's due process right since the instruction adequately conveyed the concept of reasonable doubt to the jury. Therefore, the trial court did not commit fundamental error by giving this instruction.[1]

## III.

The third issue raised for our review is whether the trial court's final instructions unconstitutionally diluted the State's burden of proof regarding Malone's intent. Although Malone failed to object to the instructions at trial, he argues that the failure of the trial court to properly instruct the jury on the element of intent constitutes fundamental error, which may be considered on appeal even if not raised by a proper objection at trial. *See Faulisi* 602 N.E.2d at 1038. To justify reversal, the error must be of such a nature that the whole charge of which it forms misleads the jury as to the law of the case. *Robinson v. State* (1989), Ind., 541 N.E.2d 531, 532. Malone maintains that the trial court committed reversible error by informing the jury that it could convict Malone of burglary by finding the lesser *mens rea* of "knowingly". Further, Malone argues that the trial court relieved the State of its burden of proving specific intent by instructing the jury that proof of "motive" was not required and by failing to define "motive" as distinct from intent.

Final instruction 14 further elaborated on the State's burden of proving culpability:

"You are instructed that where a specific intent or kind of culpability is required to make an act an offense, such as in the charge preferred against the defendant, the State is not required to make proof of specific intent by direct evidence, since purpose and intent are subjective facts. That is, they exist within the mind of man and since you cannot delve into a person's mind and determine his purpose and intent, you may look to all the surrounding circumstances, including what was said and done in relation thereto. The State is only required to produce such evidence as will satisfy the jury beyond a reasonable doubt that the crime charged was committed by the defendant with the degree of culpability charged in the information. You may, however, infer that every person intends that natural and probable consequences of his voluntary acts, unless the circumstances are such to indicate the absence of such intent. A determination of the defendant's intent may be arrived at by the jury from a consideration of the defendant's conduct and the natural and usual consequences to which such conduct logically and reasonably points.

*Where an unlawful act, however, is proved to be knowingly done, no further proof is needed on the part of the state in the absence of justifying or excusing facts.*"

Record, p. 55 (emphasis added).

A conviction for burglary requires proof beyond a reasonable doubt of a specific criminal intent which coincides in time with the acts constituting the breaking and entering. *Robinson v. State* (1989), Ind., 541 N.E.2d 531, 532, *reh'g denied; Johnson v. State* (1992), Ind.App., 605 N.E.2d 762, 765, *trans. denied.* In the present case, the trial judge read the information to the jury:

"This is a criminal action brought by the State of Indiana against Frederick A. Malone upon an information charging the de-

---

1. Since we found no fundamental error in giving the instruction, we need not address Malone's claim that the instruction violated Art. I, § 12 of the Indiana Constitution because it improperly defined reasonable doubt.

fendant with burglary, Class B Felony, which information omitting formal parts reads as follows:

> The undersigned affiant swears that on or about the 28th day of August 1993 . . . one Frederick a. Malone did then and there unlawfully, knowingly, and feloniously break into the residential dwelling and place of human habitation of Ruth Duran, situate [sic] at 601 west Marion, Elkhart, Elkhart county, Indiana with the intent to commit a felony therein, to-wit: the crime of theft, by knowingly exerting unauthorized control over property of the owner, then and there intending to deprive the owner of the use and value of said property . . . ."

Record, p. 44. The jury was instructed regarding the elements of the offense as well as the definition of "knowingly" in final instruction 7:

> "The crime of burglary is defined by statute as follows:
>
> A person who breaks and enters the building or structure of another person, with intent to commit a felony in it, commits burglary, a Class C Felony. However, the offense is a Class B Felony . . . if the building or structure is a dwelling . . . .
>
> To convict the defendant, the State must have proved beyond a reasonable doubt each of the following elements:
>
> > the defendant;
> >
> > (1) *knowingly,*
> >
> > (2) broke and entered
> >
> > (3) the building or structure of another, to-wit: Ruth Duran,
> >
> > (4) that the building or structure was a dwelling,
> >
> > (5) with the intent to commit a felony in it, to-wit: theft by knowingly exerting unauthorized control over property of another person, with the intent to deprive the owner of any part of its use of [sic] value.
>
> If the state failed to prove each of these elements beyond a reasonable doubt, you should find the defendant not guilty of burglary, a Class B Felony.
>
> If the State did prove each of these elements beyond a reasonable doubt, you should find the defendant guilty of burglary, a Class B Felony."

Record, p. 48 (emphasis added). An identical instruction was given as preliminary instruction 5. Final instruction 8 defined culpability:

> "Culpability is defined by statute as follows:
>
> A person engages in conduct "knowingly" if, when he engages in the conduct, he is aware of a high probability that he is doing so.
>
> Unless the statute defining the offense provides otherwise, *if a kind of culpability is required for commission of an offense, it is required with respect to every material element of the prohibited conduct.*"

Record, p. 49 (emphasis added).

These instructions, read as a whole, informed the jury that guilt must rest upon a "knowing" state of mind. *See Darby v. State* (1987), Ind., 514 N.E.2d 1049, 1055. Furthermore, the instructions sufficiently stated the specific elements of the offense of burglary, including the intent to commit a felony, to wit: theft. Moreover, the "knowingly" language Malone emphasizes in instruction 7 directly modifies the breaking and entering element of the burglary, not the intent to commit theft. Consequently, Malone fails to demonstrate fundamental error.

Malone also contends that the trial judge failed to define the term "motive" within the context of the following instruction:

> "You are instructed that proof of the motive on the part of the State is not indispensable nor essential to a conviction. While the motive to commit a crime may be shown as a circumstance in determining the guilt or innocence of the defendant, the State is not required to prove a motive on the part of the defendant in order to convict him."

Record, p. 67. Malone argues that the jury was "likely to conclude that the State was relieved of its burden to prove intent" because of the absence of an instruction on motive. We note that Malone failed to object to the challenged instruction and failed to

tender a written instruction which defined the term "motive." *See Voss v. State* (1984), Ind.App., 469 N.E.2d 788, 792. Nevertheless, a review of the instruction does not lead us to conclude that the jury could have interpreted it as relieving the State of its burden to prove intent. The instruction merely stated that the State was not required to prove motive which was not an element of burglary. Thus, Malone fails to demonstrate fundamental error on this point.

## IV.

■ The fourth issue raised for our review is whether the trial court committed fundamental error by giving preliminary instruction 7 which vitiated Malone's due process right to the presumption of innocence under the federal and state constitutions. Although Malone failed to object to the instruction at trial, he argues that the failure of the trial court to properly instruct the jury on the presumption of innocence constitutes fundamental error, which may be considered on appeal even if not raised by a proper objection at trial. *See Faulisi,* 602 N.E.2d at 1038. Fundamental error is error so blatant and prejudicial that, if not corrected, would deny a defendant due process. *Coleman v. State* (1994), Ind.App., 630 N.E.2d 1376, 1378, *trans. denied.* As a person accused of a criminal offense, Malone had a constitutional due process right to a fair trial. *See* U.S. Const. amends. V, XIV; Ind. Const. art I, §§ 12, 13. A denial of due process constitutes fundamental error, necessitating reversal. *Olson,* 563 N.E.2d at 567. Due process constitutionally clothed Malone with a presumption of innocence. *See Estelle v. Williams* (1976), 425 U.S. 501, 503, 96 S.Ct. 1691, 1692, 48 L.Ed.2d 126, *reh'g denied,* 426 U.S. 954, 96 S.Ct. 3182, 49 L.Ed.2d 1194. An instruction on the presumption of innocence "represents one means of protecting the accused's constitutional right to be judged solely on the basis of proof adduced at trial." *Taylor v. Kentucky* (1978), 436 U.S. 478, 485–486, 98 S.Ct. 1930, 1934–1935, 56 L.Ed.2d 468. An instruction on the presumption of innocence is considered necessary because it "cautions the jury to put away from their minds all the suspicion that arises from the arrest, the indictment, and the arraignment and to reach their conclusions solely from the legal evidence adduced. *Vaughan v. State* (1983), Ind.App., 446 N.E.2d 1, 3.

■ The trial court gave the following instruction as preliminary instruction 7:

"Under the law of the State of Indiana in all criminal cases the defendant is presumed to be innocent until proven guilty beyond a reasonable doubt, and this presumption prevails throughout the trial until the close thereof, and *you should weigh the evidence in light of this presumption of innocence, if it is possible to do so.*"

Record, p. 27 (emphasis added). In addition to this, the trial court gave the following final instruction:

"The defendant is presumed to be innocent of any offense, notwithstanding the charge against him, and this presumption of innocence remains with him throughout the trial. And in your deliberations, you should weigh the evidence in the light of this presumption that the defendant is innocent, and unless from the evidence you are convinced of his guilt, beyond a reasonable doubt, you should find the defendant not guilty. The defendant is not called upon to establish his innocence. The law presumes him innocent of the commission of any crime, and that presumption stands in his favor throughout the entire trial, and there can be no conviction unless the evidence in this trial has wholly removed the presumption of innocence, and has satisfied beyond a reasonable doubt the guilt of the defendant."

Record, p. 56. When read together, these instructions informed the jurors that they were to reconcile the evidence with the presumption of innocence, that Malone was not required to prove his innocence, and that the presumption of innocence remains with a defendant throughout the trial. Malone vigorously argues, however, that the instructions cannot be read together, but rather that an erroneous instruction cannot be corrected by giving an accurate one unless the erroneous instruction is withdrawn. *See Todd v. State* (1951), 229 Ind. 664, 670, 101 N.E.2d 45, 47. We agree that, as a general rule, Malone's argument is correct. However, while in-

struction 7 is perhaps not an ideal instruction, it is not so erroneous as to be in conflict with the other instruction and, therefore, to fall within the meaning of this general rule. Consequently, taken together, the instructions fully informed the jury as to the nature and operation of the presumption of innocence. While Malone relies heavily upon *Spradlin v. State* (1991), Ind., 569 N.E.2d 948, 951, to support his contention, we find the instructions in that case to be distinguishable from the case before us. Therefore, we conclude that the trial court did not commit fundamental error by giving instruction number 7 and that the court did not violate the federal or state constitutional due process clauses by doing so.

### V.

The fifth issue raised for our review is whether the trial court's final instructions 1, 2, and 9 violated Article I, § 19 of the Indiana Constitution.[2] Malone argues that the trial court committed reversible error by violating the Indiana constitutional provision allowing the jury to determine the law for itself. Specifically, Malone maintains that the trial court's final instructions made it mandatory for the jury to follow common law interpretations of the word "breaking" in the burglary statute, in violation of the Indiana constitutional provision precluding a trial court from binding the conscience of the jury. While Malone failed to object to the instructions at trial, he asserts that the trial court committed fundamental error in giving them. *See Faulisi,* 602 N.E.2d at 1038. The trial court gave the following as final instruction 1:

"Ladies and gentlemen of the jury:

It is the duty of the court to instruct you, in writing, at this time concerning the matters of law which are necessary for your information in giving your verdict.

In discharging this duty, the court has no right to assume, and does not assume, that any fact or facts have been established or not established, it being your exclusive right and duty under the Constitution of the State of Indiana to determine

from all of the evidence what has and what has not been proven.

Since this is a criminal case the Constitution of the State of Indiana makes you the judges of both the law and the facts. *Though this means that you are to determine that law for yourselves, it does not mean that you have the right to make, repeal, disregard or ignore the law as it exists. The instructions of the court are the best source as to the law applicable to this case.* "

Record, p. 41 (emphasis added).

The court gave this instruction as final instruction 2:

"While the constitution of this state makes the jurors the judges of the law as well as the facts, this does not mean that the jurors may willfully and arbitrarily disregard the law.

*It means that jurors under their oaths should honestly, justly and impartially judge the law as it exists. It does not mean that jurors may so judge the law in any case so as to make it null and void and of no force,* but that they shall so judge the law as to give it a fair and honest interpretation to the end that the law in each and every case may be fairly and honestly enforced.

*Any other interpretation of the law would weaken the safeguards erected by society for its protection; for by the non-enforcement of the law and its penalties in all criminal cases where it is shown by the evidence, beyond a reasonable doubt to have been violated, contempt for the law is bred among the very class that it is intended to restrain.*

The facts must be judged and found by the jury from a careful consideration of all the testimony given by the witnesses in the case, and *under your oaths you have no right to arbitrarily disregard either the law or the facts in the case.*"

Record, p. 42 (emphasis added).

▮ In conjunction with the preceding two instructions, the trial court gave final instruction 9:

---

**2.** Article I, § 19 of the Indiana Constitution provides that, "In all criminal cases whatever, the

jury shall have the right to determine the law and the facts." Ind. Const. art. I, § 19.

"To constitute a break or breaking as used in the burglary statute, it is not necessary that there be a fracturing or injury to a material part of the building. It means the slightest use of force to gain unauthorized entry into a building."

Record, p. 50.

■ The constitutional guarantee set forth in Article I, § 19 of the Indiana Constitution which confers upon the jury the right to determine the law as well as the facts is neither absolute nor exclusive. *Jones v. State* (1983), Ind., 449 N.E.2d 1060, 1065; *Bigler v. State* (1992), Ind.App., 602 N.E.2d 509, 518, *reh'g denied, trans. denied.*

In *Johnson v. State* (1988), Ind., 518 N.E.2d 1073, 1076, the trial court gave the following instruction:

"The Constitution of the State of Indiana makes the jury the judges of both the law and the facts in criminal cases. Though this means that you are to determine the law for yourself, it does not mean that you have the right to make, repeal, disregard, or ignore the law as it exists. The instructions of the court are the best sources as to the law applicable to this case."

*Id.* at 1076. The supreme court stated that the instruction was a correct statement of the law and adequately explained the role of the jury. *Id.*

Furthermore, in *Cox v. State*, the supreme court held that the jury's right to determine the law and the factors which would govern its verdict does not mean that the jury is free to ignore the law or make new law. *Cox v. State* (1985), Ind., 475 N.E.2d 664, 669. The supreme court held that "[i]n determining the law the jury must stay within the law as it exists; otherwise the verdict would be contrary to law." *Id.* In *State v. Alcorn* (1994), Ind., 638 N.E.2d 1242, *reh'g denied* the supreme court reaffirmed the rule that "[w]hile a jury has the right to determine the law, it does not mean that the jury is free to ignore the law or make new law." *Id.* at 1246.

■ In the case before us, the challenged instructions do not constitute fundamental error. First, the instruction regarding the term "breaking" is a correct statement of the law. *See England v. State* (1988), Ind., 530 N.E.2d 100, 101. In addition, the instructions regarding the role of the jury as judges of both the law and the facts were proper. The instructions did not restrict the jurors in their state constitutional right to determine the law for themselves. The jurors were correctly instructed that in determining the law, they were required to "stay within the law as it exists." *Cox*, 475 N.E.2d at 669. Consequently, Malone failed to establish that these instructions constituted fundamental error.

## VI.

The final issue raised for our review is whether Malone was improperly sentenced on the basis of an inaccurate pre-sentence investigation report ("PSI"). Specifically, Malone contends that the trial court refused to correct the PSI after defense counsel alerted the court that two misdemeanors were erroneously listed as felonies. He maintains that he was sentenced on the basis of the inaccurate information in violation of his due process right to be sentenced on the basis of materially true assumptions.

Malone's PSI disclosed his prior convictions, which included two "class 2 felonies" in Illinois for burglary. During the sentencing hearing, defense counsel advised the trial judge that while Malone's history indicated that he had been charged with "class 2 felonies", he was actually convicted of misdemeanors. In response, the following dialogue ensued:

"[DEFENSE COUNSEL]: It says Class 2 Felonies, but I took it as a misdemeanor in that sense.

THE COURT: Why would you call it a Class 2 Felony? An oxymoron could tell you a Class 2 Felony is not the same thing as a misdemeanor.

\*　　\*　　\*　　\*　　\*　　\*

THE COURT: It's not the first time that he's had felonies with misdemeanor penalties.

\*　　\*　　\*　　\*　　\*　　\*

THE COURT: Well—and my point being the record doesn't say that to be the case.

Regardless of what the sentence might be, the record does not say it's a misdemeanor. It says a Class 2 Felony. Whatever a Class 2 Felony is, it's still a felony.

\* \* \* \* \* \*

THE COURT: Well, you can read it whatever you—however you want to. I still say the record does not say that that's what it is . . . ."

Record, pp. 327–328.

In imposing a twenty year term of imprisonment, the trial judge stated in part:

"I agree with the State, that based upon the defendant's past record, probably anything less than the 20–year maximum sentence would be to seriously depreciate any of the consequences of imposing any sentence.

I say that for a variety of reasons. First of all, it's clear that prior to today there are at least four other felony convictions, three of which are theft type involving either burglaries or robberies or receiving stolen property.

If a Class 2 Felony is a Class 2 Felony regardless of what the penalty is, then that fact would make a fifth one. If not, that along with his criminal conversion would make two other theft type offenses for which he got misdemeanor treatment. This burglary then makes the fifth felony."

Record, pp. 334–335. Malone argues that he is entitled to a new sentencing hearing because the trial court misconstrued the Class 2 Felony charges and relied upon the error in imposing an enhanced sentence.

■ Although the legislature mandated that a PSI be filed prior to sentencing, it has not set guidelines on the weight which a judge must attribute to the report. Ind. Code § 35–38–1–8. Such weighing is part of the broad discretion granted to trial courts in sentencing. *Idle v. State* (1992), Ind.App., 587 N.E.2d 712, 714, *trans. denied.*

■ Malone relies on *Fugate v. State* (1987), Ind.App., 516 N.E.2d 75, to buttress his position that a trial court's reliance upon an inaccurate PSI is reversible error. In *Fugate,* the trial court expressly relied upon and incorporated an improper PSI when it

sentenced the defendant. *Id.* at 80. By contrast, the trial court in the instant case did not expressly rely on the inaccurate parts of the PSI; in fact, a review of the trial court's statements during the sentencing hearing reveals that the judge was unsure how to weigh the Class 2 Felony citations in the PSI. In light of Malone's criminal history as detailed by the trial court, it appears the court did not accord much weight to the Class 2 Felonies. Moreover, the enhanced sentence did not rest solely on the challenged conviction; Malone had numerous criminal convictions to support the imposition of an enhanced sentence. Therefore, we find that Malone failed to demonstrate reversible error warranting a new sentencing hearing.

For the foregoing reasons, we affirm Malone's burglary conviction.

AFFIRMED.

BARTEAU, J., concurs.

FRIEDLANDER, J., dissents with separate opinion.

FRIEDLANDER, Judge, dissenting.

I respectfully dissent with respect to the majority's view that the trial court's final instruction using the terms "moral certainty" in defining reasonable doubt did not constitute fundamental error.

In *Tobias v. State* (1995), Ind.App. 659 N.E.2d 246, this court determined that such an instruction denies a defendant his right to due process and requires reversal. *See also Winegeart v. State* (1994), Ind.App., 644 N.E.2d 180. As in *Tobias,* the instruction here failed to present an objective standard by which the jurors were to judge Malone's guilt. In my view, the challenged instruction clearly joined the "moral certainty" to the matter of guilt.

I would reverse and remand for a new trial.