STATE OF INDIANA ON THE RELATION OF THE INDIANA YOUTH CENTER *v.* THE HOWARD JUVENILE COURT AND THE HONORABLE ROBERT J. KENSEY, JUDGE OF THE HOWARD JUVENILE COURT.

[No. 875S188. Filed April 2, 1976.]

*Theodore L. Sendak,* Attorney General, *James Bopp, Jr.,* Deputy Attorney General, for relator.

*William R. Hunter,* of Winchester, for respondent. *Frank E. Spencer,* Amicus Curiae for Juvenile Court of Marion County.

GIVAN, C.J.—Relator seeks a writ mandating respondents to vacate their order of May 2, 1975, committing Elja Arnett,

Jr. to the Indiana Youth Center and instead to commit him to the Indiana Boys' School. The record discloses the following facts:

On April 3, 1975, a petition was filed in respondent court alleging delinquency on the part of Elja Arnett, in that he attempted a robbery while armed.

On May 2, 1975, following a hearing, a juvenile referee filed his report finding that Arnett had committed the alleged act of delinquency; that he was over the age of fifteen years and under the age of eighteen years. The referee's report further recommended that Arnett be admitted to the Indiana Youth Center.

Further, on May 2, 1975, Arnett filed with the respondent court, "Waiver of Consent" requesting commitment to the Indiana Youth Center. On the same day respondent filed his "Order of Commitment to the Indiana Youth Center, Plainfield, Indiana." In that order respondent made the following findings:

(1) That Arnett is a delinquent;

(2) That Arnett has not previously been convicted of a felony and has not been previously confined in a State institution for the conviction of a felony;

(3) That the respondent had inadequate local facilities to accomplish treatment and rehabilitation;

(4) That commitment to the Boys' School would not accomplish any meaningful rehabilitative purpose;

(5) That Arnett has rehabilitative potential and is in need of counseling, education, vocational training and custodial security;

(6) That no public institution in Indiana other than the Youth Center is designed to provide the needed rehabilitative services for Arnett; and

(7) That no just or reasonable rehabilitative purpose would be served by waiving jurisdiction of Arnett to adult criminal

court for the sole purpose of claiming admission to the Indiana Youth Center.

The order further recites that to deny Arnett admission to the Indiana Youth Center for the sole reason that jurisdiction was not waived to adult criminal court would be an unreasonable classification and violate the equal protection clauses of the United States and Indiana Constitutions and that the Indiana Youth Center is a "suitable public institution" as defined by IC 31-5-7-15(2).

On June 19, 1975, the respondent denied relator's motion to intervene. On July 9, 1975, respondent court, on its own motion, amended its order of commitment entered on May 2, 1975, to provide that Arnett was not to be held in close confinement with adult offenders and that he be treated as a juvenile and not as an adult offender. The motion to intervene was resubmitted by relators and again was denied.

Two issues are presented by this original action:

(1) Whether the Indiana Youth Center is a "suitable institution" pursuant to IC 31-5-7-15(2) [Burns Supp. 1975] for juveniles found to be delinquent; and

(2) Whether denial of admission of Arnett to the Indiana Youth Center for the sole reason that jurisdiction over him was not waived to adult criminal court would create an unreasonable classification and thus violate the equal protection clauses of the United States and Indiana Constitutions and constitute cruel and unusual punishment.

The relator argues that the statute does not permit the sentencing of a juvenile delinquent to the Indiana Youth Center. IC 31-5-7-15 provides for the disposition which a juvenile court can make upon finding a juvenile to be delinquent. The pertinent parts of that section read as follows:

"(2) Commit the child to any suitable public institution or agency, which shall include, but is not limited to, the state institutions for the feeble-minded, epileptic, insane, or any other hospital or institution for the mentally ill, or commit the child to a suitable private institution or

agency incorporated or organized under the laws of the state, and authorized to care for children or to place them in suitable approved homes;

\* \* \*

"(5) Make such further disposition as may be deemed to be to the best interests of the child, except as herein otherwise provided.

"No adjudication upon the status of any child in the jurisdiction of the court shall operate to impose any of the civil disabilities ordinarily imposed by conviction, nor shall any child be deemed a criminal by reason of such adjudication, nor shall such adjudication be deemed a conviction, nor shall any child be charged with or convicted of a crime in any court, except as provided in section 14 [31-5-7-14] and section 24 [31-5-7-24] of this chapter. The disposition of a child or any evidence given in the court shall not be admissible as evidence against the child in any case or proceeding in any other court, nor shall such disposition or evidence operate to disqualify a child in any future civil service examination, appointment or application.

"Whenever the court shall commit a child to any institution or agency it shall transmit with the order of commitment a summary of its information concerning such child."

Besides the enumerated types of institutions, "suitable" public institutions or agencies are determined by the enabling legislation of the respective institutions. See IC 31-5-2-1, which reads in pertinent part as follows:

"If any child is found guilty of the offense charged against it, or appear to be wilfully wayward and unmanageable, the court may commit him or her to the Indiana Boys' School, the Industrial School for Girls, or to any other state, penal or reformatory institution authorized by law to receive such boy or girl, *subject to such conditions as are already provided by law for the reception of such children in said schools and institutions.*" (emphasis added.)

In the case of *State ex rel. Moore* v. *Sup. Ct. of Shelby Cty.*, (1975) 262 Ind. 574, 321 N.E.2d 204, 45 Ind. Dec. 352, this Court held that a juvenile delinquent could not be committed to the State Farm where a statute relating to that institution allowed only males over the age of commitment to the Boys' School to be committed. See IC 11-2-5-4 [Burns

1975]. The language of IC 31-5-7-15 [Burns Supp. 1975] "[N]or shall such adjudication be deemed a conviction. . . ." emphasizes the character of the dispositions available to the juvenile court.

The statute relating to the commitment to the Indiana Youth Center reads as follows:

"There is hereby created and established within the department of correction a correctional institution for male offenders who have attained an age of not less than fifteen [15] years not previously confined in a state institution for the conviction of a felony, and who shall have been convicted of a felony punishable by imprisonment in a state institution under the jurisdiction of the department of correction and sentenced to imprisonment, except offenders sentenced to death or life imprisonment. This institution shall be known as the 'Indiana Youth Center'; and it shall be utilized as a medium-security institution with emphasis on education, training and rehabilitation of youthful offenders." IC 11-3-6-1 (Burns 1973)

We, therefore, hold in view of the language of the statute, that the Youth Center is not a "suitable institution" for juveniles found to be delinquent for the reason that they are not persons who have been convicted of a felony. Respondent points out that temporary transfers may be made from the Boys' School to the Indiana Youth Center pursuant to IC 11-3-4.5-1 [Burns 1973]. Thus, he urges the legislature has established a policy that the Youth Center be available for juvenile delinquents. However, that statute provides that temporary transfers may be made only when a juvenile at least sixteen years of age is found incorrigible and his presence in the Boys' School appears to be detrimental to the welfare of that institution or the juvenile is dangerous to himself or others. We hold that it does not follow that by allowing temporary transfers in limited situations the legislature has created a public policy of allowing all juvenile delinquents to be sent to the Youth Center.

Respondent argues that to deny Arnett admission to the Youth Center solely because he has not been adjudged guilty

of a felony is to deprive him of equal protection of the laws, as guaranteed by the United States Constitution and the Indiana Constitution. The legislature is not precluded from indulging in classifications which treat one group differently from another. Generally, if a classification is rationally related to a legitimate purpose, it will be sustained. *McGinnis* v. *Royster*, (1973) 410 U.S. 263, 93 S.Ct. 1055, 35 L.Ed.2d 282; *Allen* v. *Pavach*, (1975) 263 Ind. 574, 335 N.E.2d 219, 49 Ind. Dec. 145; *State ex rel. Miller* v. *McDonald*, (1973) 260 Ind. 565, 297 N.E.2d 826, 37 Ind. Dec. 332.

The Indiana legislature has provided an alternative method for the training and reformation of children who have committed acts which would be crimes if committed by adults. The court having juvenile jurisdiction may determine whether a child under eighteen years of age should be treated as a delinquent or as a criminal, based upon factors such as the age of the child, the nature of the offense, previous juvenile offenses and the best interests of the child and of the State. See IC 31-5-7-14 [Burns Supp. 1975]. See also *Aikins* v. *State*, (1972) 259 Ind. 596, 290 N.E.2d 441, 34 Ind. Dec. 375. Thus, the dual classification of youthful offenders is rationally related to their effective rehabilitation.

Respondent also argues that to deprive Arnett institutionalization in the Youth Center would violate his right to treatment secured by the United States Constitution and by IC 31-5-7-1 (Burns 1973), *supra*. In this argument respondent urges that because Arnett does not have sufficient time remaining before his eighteenth birthday (at which time the Boys' School is authorized to discharge any boy from the institution [IC 11-3-4-2] [Burns 1973]), he will not receive adequate treatment at the Boys' School. No argument is made that the Boys' School does not provide treatment to those in its custody. In fact, the statute provides that the superintendent promote regular improvement in the boys' studies, trades and employment. IC 11-3-2-2 (Burns Supp.

1975). There is nothing before this Court to indicate that Arnett could not have received treatment during his commitment to the Boys' School should the court have made such a decision.

For the above reasons, a permanent writ is granted mandating respondent to vacate its order committing Elja Arnett, Jr. to the Indiana Youth Center in Cause No. 6965.

NOTE.—Reported at 344 N.E.2d 842.