**STATE of Indiana, Appellant,**

v.

**William P. ALCORN, Appellee.**

No. 49S00–9305–DP–585.

Supreme Court of Indiana.

Aug. 12, 1994.

Rehearing Denied Dec. 2, 1994.

Pamela Carter, Atty. Gen., Geoff Davis, Deputy Atty. Gen., for appellant.

David E. Cook, Samper, Hawkins, Atz & Cook, Indianapolis, David L. Byers, Holwager & Holwager, Beech Grove, for appellee.

GIVAN, Justice.

This cause comes to us on an interlocutory appeal from the Marion Superior Court. This Court has jurisdiction to resolve the appealable matter pursuant to Ind.Appellate Rule 4(A). The interlocutory appeal challenges the constitutionality of a saving clause in P.L. 250–1993, Section 3 which amended Ind.Code §§ 35–50–2–3 and 35–50–2–9.

On December 10, 1991, appellee was charged by information of Murder, Felony Murder and Robbery, a Class A felony. The State subsequently filed an information for the death penalty and later an amended information for the death penalty.

On July 1, 1993, amendments to the Indiana death penalty statute took effect. As amended, Ind.Code § 35–50–2–3(b) allows a trial court to impose a sentence of life imprisonment without parole as an alternative sentence to death. Also as amended, Ind.Code § 35–50–2–9 requires the court in a death penalty case to instruct the jury concerning the range of statutory penalties for murder and allows the jury to recommend life imprisonment without parole as a sentence. Public Law 250–1993, Section 3 provides that the amended versions of Ind.Code §§ 35–50–2–3 and 35–50–2–9 only apply to murders committed after June 30, 1993.

On September 8, 1993, appellee made a pretrial motion for the court to instruct the jury concerning the sentencing alternative of life imprisonment without parole in the event he was found guilty of murder. The State objected to appellee's motion; however, after a hearing on the matter, the court granted the motion. In reaching its decision to grant appellee's motion, the trial court ruled that P.L. 250–1993, Section 3 violated the Equal Protection clauses of both the Indiana and United States Constitutions.

Appellant claims the trial court erred when it granted appellee's motion to instruct the jury concerning the sentencing alternative of life imprisonment without parole. Appellant contends the saving clause is not an unconstitutional denial of appellee's equal protection rights.

Appellant correctly points out that every enactment of the General Assembly stands before the appellate court cloaked with a presumption of constitutionality, *Eddy v. McGinnis* (1988), Ind. 523 N.E.2d 737, and that a saving clause is presumed to be constitutional until that presumption is rebutted. *Gee v. State* (1987), Ind., 508 N.E.2d 787.

In addressing an equal protection challenge, we must first determine which level of scrutiny is applicable: the traditional "rational basis" analysis or the more stringent "strict scrutiny" analysis. We will apply a rational basis analysis except where the classification is suspect or involves fundamental rights. *Collins v. Day* (1992), Ind. App, 604 N.E.2d 647. Strict scrutiny applies

only if the classification "impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class." *Id.* at 649; *Massachusetts Bd. of Retirement v. Murgia* (1976), 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.E.2d 520, 524. Examples of fundamental rights are voting, procreation, interstate travel, presenting a defense in a criminal action; while examples of suspect classes are race, gender, national/ethnic origin and alienage. *Johnson v. St. Vincent Hospital, Inc.* (1980), 273 Ind. 374, 404 N.E.2d 585.

■ Appellee claims that strict equal protection scrutiny should apply in this case. He asserts that the saving clause distinguishes between murders committed after June 30, 1993 and those committed before that date. He argues that since he has a "fundamental interest in life", the classification must further a compelling state interest. We do not agree. The interest that appellee has in life is curtailed by the procedures laid out in the death penalty statute. Further, there is no suspect class affected by the saving clause. Accordingly, the appropriate level of scrutiny to apply is the rational basis analysis, which merely requires the classification to bear some rational relationship to a legitimate state interest or goal. *Collins, supra.*

■ As mentioned above, the saving clause was designed to apply to those murders committed after June 30, 1993. In doing this, the legislature created a nexus between the date of the murderous conduct and the implementation of the amended death penalty statute. The saving clause does not violate appellee's equal protection right because it is rationally related to the state's interest in determining under what circumstances the alternative sentence will be available. The manner in which the legislature made its determination was highly appropriate. We find no reason to interfere with the province of the legislature.

Appellee claims the application of the saving clause violates principles of reformation and may result in vindictive justice in violation of the Indiana Constitution.

■ We have held that if a defendant is found guilty of an offense, he shall be sentenced under the statute in force at the time the offense was committed. *Gee, supra; Bonner v. State* (1979), 271 Ind. 388, 392 N.E.2d 1169. The time of a crime is selected as an act of free will by the offender. *Gee, supra.* Penal consequences are frozen as of that event. *Id.* Alteration of them through subsequent events by the offender or the State is foreclosed. *Id.*

■ At the time of the alleged offense of which appellee is charged, the sentence of life imprisonment without parole was not an available option under the statute. Accordingly, appellee's trial must be governed by the law that was in effect when the crime was committed. We believe the application of the saving clause in this matter will not violate any principle of reformation; and neither is it an exercise of vindictive justice.

■ Appellee's brief asserts three additional issues pertaining to the saving clause. Appellant has pointed out that appellee failed to advance these issues during the trial court's hearing on the pretrial motion, and the court did not rely on them in ruling on the motion. The trial court's order granting appellee's motion to instruct the jury on the alternative sentence of life imprisonment was based solely on equal protection grounds. Notwithstanding this, the Court will address these issues since this appeal involves a substantial question of law and appellee is charged with a serious crime that may result in a death penalty.

Appellee contends the application of the saving clause may result in a disproportionate sentence in violation of both the Indiana and United States Constitutions. He claims the possibility of him receiving the death penalty is grossly disproportionate to all future death penalty cases where the defendants will have at least an opportunity to receive the sentence of life imprisonment without parole.

Article I, § 16 of the Indiana Constitution provides in part: "All penalties shall be proportioned to the nature of the offense." The United States Supreme Court has held that the Eighth Amendment to the United States

Constitution also requires that a penalty be proportioned to the offense. *Solem v. Helm* (1983), 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637; *Carroll v. State* (1980), 273 Ind. 118, 402 N.E.2d 1234, 1235, citing *Weems v. United States* (1910), 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793.

█ In an attempt to prove the disproportionate affect of the saving clause, appellee makes a comparison of his possible sentence with the possible sentences of future offenders convicted of murder. This Court and the United States Supreme Court have held in a similar situation that there is no constitutional requirement for an appellate court to compare the sentence in the case before it with the penalty imposed upon others convicted of the same crime. *Pulley v. Harris* (1984), 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29; *Roche v. State* (1992), Ind., 596 N.E.2d 896. Likewise, the review of appellee's possible sentence is not governed by the sentences imposed in future murder cases, but rather by the correlation between the penalty imposed in his case and the nature of his offense. As mentioned above, penal consequences are frozen as of the time the offense was committed. *Gee, supra.* The application of the saving clause in the present case would not result in a disproportionate sentence.

Appellee contends the application of the saving clause in his case may result in cruel and unusual punishment. He argues that denying jury instructions on life imprisonment without parole would be based simply on an arbitrary fact that the crime occurred before June 30, 1993. We repeatedly have rejected claims that this version of the Indiana death penalty procedures in effect before the recent amendments resulted in arbitrary or capricious application of the death penalty and thus cruel and unusual punishment. *See e.g. Evans v. State* (1990), Ind., 563 N.E.2d 1251; *Woods v. State* (1989), Ind., 547 N.E.2d 772; *Wisehart v. State* (1985), Ind., 484 N.E.2d 949. The mere application of the saving clause will not result in cruel and unusual punishment.

█ Appellant contends the application of the saving clause in his case will deprive him of his right to trial by jury and to have the jury determine the facts and law of his case. While a jury has the right to determine the law, it does not mean that the jury is free to ignore the law or make new law. *Cox v. State* (1985), Ind., 475 N.E.2d 664. The law regarding sentencing is not to be determined by the jury. *Taylor v. State* (1981), Ind., 420 N.E.2d 1231. It is the province of the court rather than the jury to select or focus upon the statutes which are intended to govern in a particular case. *McClain v. State* (1980), 274 Ind. 250, 410 N.E.2d 1297.

As mentioned above, appellee's trial is governed by the death penalty statute that was in effect at the time of the offense. The jury has no authority to apply the amended statute in this case since the saving clause makes the statute inapplicable to murders that were committed before June 30, 1993. As stated in *Dobbert v. Florida* (1977), 432 U.S. 282, 301, 97 S.Ct. 2290, 2302, 53 L.Ed.2d 344, 361, the state legislature "had to draw the line at some point[,]" and there is nothing irrational about relegating Alcorn to the class not governed by the new statute since it was not in effect when the murder with which he is charged was committed.

The trial court is reversed.

SHEPARD, C.J., and SULLIVAN, J., concur.

DICKSON, J., concurs in result.

DeBRULER, J., dissents with separate opinion.

DeBRULER, Justice, dissenting.

The death statute amendment would, in the absence of the savings clause, be applied in all death sentence hearings occurring after its effective date. The death sentence for murder was the maximum sentence for murder before the amendment and remained the maximum sentence for murder after the amendment. All who face a death sentence hearing after the amendment became law fall within the same class. The object of the amendment is to provide a better way for the jury and judge to determine whether a criminal defendant, convicted of murder and for

whom an aggravating circumstance outweighs mitigating circumstances, should receive the sentence of death. The equal protection clauses require that there be a rational basis for achieving this object and affecting this refinement in some but not all sentencing hearings. *State ex rel Indiana Youth Center v. Howard Juvenile Court* (1976), 264 Ind. 371, 344 N.E.2d 842; *Vicory v. State* (1980), 272 Ind. 683, 400 N.E.2d 1380. Since there is no such basis, the benefits of the amendment must be extended wherever possible. In the event appellant Alcorn is convicted of murder, and an aggravating circumstance is determined to outweigh mitigating circumstances, an occasion for application of the amendment will have arisen. I respectfully dissent.