ATTORNEYS FOR APPELLANT
Steve Carter
Attorney General of Indiana

Stephen R. Creason
Deputy Attorney General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Michael E. Deutsch
Chicago, Illinois

Jessie A. Cook
Terre Haute, Indiana

# In the
# Indiana Supreme Court

No. 02S03-0508-PD-364

STATE OF INDIANA,

*Appellant (Plaintiff below),*

v.

ZOLO AGONA AZANIA,

*Appellee (Defendant below).*

Interlocutory Appeal from the Allen Superior Court, No. 02D04-8109-CF-401
The Honorable Steve David, Special Judge

On Petition for Rehearing

**November 7, 2007**

**Sullivan, Justice.**

Zolo Agona Azania, formerly known as Rufus Lee Averhart, was convicted in 1982 of the 1981 murder of Gary Police Lieutenant George Yaros. Azania was sentenced to death in 1982 and re-sentenced to death in 1996. More detailed factual and procedural history of Azania's case is available in earlier opinions. E.g., State v. Azania, 865 N.E.2d 994, 996-97 (Ind. 2007). It is sufficient for purposes of this opinion to say that Azania's conviction for

murder stands, but the death sentence has been twice overturned. Most recently, we reversed a trial court order that prohibited the State from seeking the death penalty against Azania for the third time. Id. We now grant and address the State's petition for rehearing of that decision, in order to clarify which iteration of Indiana's death penalty statute applies to a new sentencing phase.

The State reads our most recent opinion as holding that the new sentencing phase is subject to the version of the death penalty statute in effect at the time of Azania's crime. It contends that Azania should instead be sentenced under the current version of the death penalty statute. Azania responds that our opinion was correct on this point, although he contests other aspects of our opinion in his own petition for rehearing. Azania's petition for rehearing is denied.

The State's argument does not discuss another relevant change in Indiana's capital sentencing regime: the addition of life without parole ("LWOP") to the jury's options when recommending sentences for certain murders.

When Azania murdered Lt. Yaros in 1981, two options existed for sentencing a defendant convicted of murder in a capital case: a defendant could either receive a sentence of death or a term of years. Ind. Code §§ 35-50-2-3, 9 (1982). Under the death penalty statute then in effect, the trial judge had the final say in sentencing after hearing the recommendation of the jury. Id. § 9(e).

In 1993, the Legislature added an intermediate sentencing option. The jury in the sentencing phase of a capital case was to be instructed that, in addition to the death penalty or a term of years, it had the option to recommend LWOP. See id. § 9(d) (1993). The Legislature added a savings clause that made LWOP available only where the murder had been committed after June 30, 1993. Pub. L. No. 250-1993, § 3. This savings clause has never been repealed or modified. In 1994, we confronted the question of how to handle a defendant who had committed a murder before, but was sentenced after, the LWOP option took effect. We held that the language of the statute made LWOP available only with respect to murders committed after the

2

savings clause date of June 30, 1993.  State v. Alcorn, 638 N.E.2d 1242 (Ind. 1994).  Defendants who committed murder before that date, but who for whatever reason were not sentenced until July 1993 or later, would not be eligible for LWOP.  Id.  The jury in Azania's second sentencing phase in 1996 was not given an LWOP instruction.  (Record of Proceedings at 3668-75, Azania v. State, 730 N.E.2d 646 (Ind. 2000) (No. 02S00-8808-PC-751)).

The 1993 amendment did not alter the trial court's authority to impose upon the defendant a sentence other than that recommended by the jury.  I.C. § 35-50-2-9(e) (1993).

In 2002, the Legislature amended the death penalty statute again.  Now, when the trial court judge receives a sentencing recommendation from the jury, the judge is to sentence the defendant "accordingly" – whether the jury recommends LWOP, the death penalty, or a term of years.  Id. § 9(e) (Supp. 2006).  The 2002 amendment applies to sentencing phases that occur after June 30, 2002.  Id.

Here, where the murder of Lt. Yaros occurred in 1981, the original trial and sentencing phases occurred in 1982, the first re-sentencing phase occurred in 1996, and the second re-sentencing phase will occur after 2002, the pre-1993, 1993, and 2002 statutes are all implicated.  The State argues that Azania must be sentenced under the 2002 death penalty statute, with the trial court to impose the sentence "according[]" to the jury's recommendation.  Azania argues that the pre-2002 death penalty statute should apply, with the trial court allowed to impose a sentence other than death even if recommended by the jury.  For clarity's sake, we must address the impact of both the 1993 and 2002 amendments on Azania's sentencing.

We now correct and clarify our earlier statements in Azania v. State, 865 N.E.2d 994: Azania's new sentencing proceeding is to be conducted pursuant to the current, post-2002, death penalty statute, I.C. § 35-50-2-9 (Supp. 2006).  However, in accordance with Pub. L. No. 250-1993, § 3, and Alcorn, LWOP is not available to him as a sentence, even though it is available under the current statute.

3

Support for this outcome is found on the face of the 1993 addition of LWOP to the Indiana sentencing scheme for murder. Public Law 250-1993 specifically states that LWOP is to be available only in sentencing phases for defendants who committed their crimes after June 30, 1993. Lt. Yaros's murder occurred in 1981. As in 1996, Azania is not eligible for LWOP, despite its appearance in the death penalty statute then and now. I.C. § 35-50-2-9 (Supp. 1996) & (Supp. 2006).

Regarding the 2002 amendment, we have held, in the intervening years between it and this appeal, that it was a procedural, not a substantive, amendment. See, e.g., Helsley v. State, 809 N.E.2d 292 (Ind. 2004); Ritchie v. State, 809 N.E.2d 258 (Ind. 2004). In the case of a defendant who committed murder between July 1, 1993, and June 30, 2002, it is only strictly procedural. A murder committed before July 1, 1993, however, was committed in a substantively different sentencing realm than one committed afterward. What the sentence might be, rather than how it will be determined, is at stake in the new regime.

We recognize that the applicability of the 2002 amendment raises several issues. The first part of the relevant subsection of I.C. § 35-50-2-9 reads: "(e) For a defendant sentenced after June 30, 2002, except as provided by IC 35-36-9, if the hearing is by jury, the jury shall recommend to the court whether the death penalty or life imprisonment without parole, or neither, should be imposed." Read literally, such a procedure seems relatively straightforward. But the code provision makes no mention of the savings clause in Pub. L. No. 250-1993, § 3, which directs that defendants convicted of a murder committed before June 30, 1993, are ineligible for LWOP. This issue is relatively easily addressed by applying the savings clause to the code.

Second, it is likely that when the Legislature set an effective date for the 2002 amendment of July 1, 2002, it was assuming that sentencing would immediately follow the guilt phase. Our past interpretation of I.C. § 35-50-2-9(d) explains that we must occasionally make sense of a provision – here, subsection (e) – by taking practical considerations into account. We held in Burris v. State that I.C. § 35-50-2-9 is not meant to be read absolutely literally: the first sentence of subsection (d) reads, "If the defendant was convicted of murder in a jury trial, the

4

jury shall reconvene for the sentencing hearing," but we do not read the statute to mean that we must track down all the members of the original guilt-phase jury and reunite them to hear another penalty phase if one is required. Burris v. State, 642 N.E.2d 961, 963 (Ind. 1994); see also id. at 969 (Sullivan, J., concurring) ("This court must fill in rules for proceeding in death penalty cases in those circumstances where the legislature has not provided explicit guidance."). Still, as outlined below, we believe that the procedural nature of the 2002 amendment and a defendant's extant constitutional protections overcome this separation between what the Legislature probably foresaw and what we face now.

Our holding of course principally means that the trial judge will be bound by the jury's sentencing recommendation, as opposed to the trial judge taking the recommendation as exactly that – a recommendation. This distinction between the pre- and post-2002 death penalty statutes looms large in the minds of counsel for both the State and Azania. With that in mind, we call specific attention to both the majority and concurring opinions in Helsley. Though the trial judge must sentence "accordingly," we do not expect Indiana trial judges to enter sentences that are illegal under the United States or Indiana Constitution. Justice Boehm ably emphasized this point in his concurring opinion in Helsley, and it bears mention here as well. Helsley, 809 N.E.2d at 305-06 (Boehm, J., concurring). In Azania's case, the specter of an unconstitutional sentence particularly arises where the jury might consider Azania's future dangerousness. We held that future dangerousness was not a concern in Azania's re-sentencing, because the trial judge would have the final say in applying the death penalty and because the jury system requires that we trust juries to follow the law in their deliberations. Azania, 865 N.E.2d at 1007-08. With the trial judge's sentencing discretion limited by the 2002 death penalty statute amendment, we emphasize again, as we did in Helsley, that a trial judge is not expected, and indeed not permitted, to enter a sentence where the sentence, or the manner of arriving at it, is illegal.

We grant the State's petition for rehearing and hold that Azania should be re-sentenced under the post-2002 death penalty statute, but without the availability of LWOP. Azania's petition for rehearing is denied.

Shepard, C.J., and Dickson, J., concur. Boehm, J., concurs in part and dissents in part with separate opinion. Rucker, J., concurs in part and dissents in part with separate opinion.

**Boehm, Justice, concurring in part and dissenting in part.**


For the reasons set forth in my dissenting opinion in the original disposition of this appeal, Azania v. State, 865 N.E.2d 994, 1010-1013 (Ind. 2007), I would grant Azania's petition for rehearing.

Because a majority has determined that a new penalty phase should be conducted, I express my views on the procedural issues addressed by the majority. I agree that the 2002 amendments to the death penalty statute apply to the penalty phase, and that life without parole is not an available punishment for a crime committed before 1993. My views on the relationship between judge and jury under the 2002 death penalty amendments are set forth in my separate concurring opinion in Helsley v. State, 809 N.E.2d 292, 305-08 (Ind. 2004).

**Rucker, Justice, concurring in part and dissenting in part.**

I would grant Azania's petition for rehearing for the reasons expressed in my dissent to this Court's original majority opinion. See State v. Azania, 865 N.E.2d 994, 1013-16 (Ind. 2007) (Rucker, J., dissenting). As for the State's petition for rehearing, I agree with the majority that the 2002 version of the death penalty statute is applicable in this case. However, I disagree with the majority's conclusion that life without parole is not a sentencing option.

As added by Pub. L. No. 117-2002, Indiana Code § 35-50-2-9(e) provides in pertinent part: "For a defendant sentenced after June 30, 2002, . . . if the hearing is by the jury, the jury shall recommend to the court whether the death penalty or life imprisonment without parole, or neither, should be imposed." Of course in the event the jury recommends "neither" it may recommend a term of years. See I.C. § 35-50-2-3 (Supp. 2002) ("A person who commits murder shall be imprisoned for a fixed term of fifty-five (55) years, with not more than ten (10) years added for aggravating circumstances or not more than (10) years subtracted for mitigating circumstances . . . ."). The majority is correct that when life without parole was included as a sentencing option in 1993, a savings clause was included that provided "IC 35-50-2-3 and IC 35-50-2-9, as amended by this act, only apply to murders committed after June 30, 1993." Pub. L. No. 250-1993 § 3. The majority says that this 1993 savings clause applies to the 2002 amended statute. But how can that be? The Legislature could have included a similar savings clause to the 2002 amendment. It did not. Unlike the majority I think it inappropriate to speculate on what the "Legislature probably foresaw." Slip op. at 5. "[I]n construing criminal statutes, we are not concerned with what the Legislature might have done. We are concerned only with determining the legislative intent as expressed in the statute." Smith v. State, 675 N.E.2d 693, 697 (Ind. 1996) (citation omitted). It appears to me the Legislature expressed its intent in 2002 with clear and unambiguous language and simply repealed a prior amendment. When language from an earlier statute is deleted by amendment, it is presumed that the Legislature intended to change the law. See, e.g., State v. Boles, 810 N.E.2d 1016, 1019 (Ind. 2004); United Nat'l Ins. Co. v. DePrizio, 705 N.E.2d 455, 460 (Ind. 1999). Because Azania is to be sentenced according to the 2002 statute, its entire provisions should apply, including the possibility of life without parole. On this point I respectfully dissent.